

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-23-2008

# In Re: Natale

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3224

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"In Re: Natale " (2008). *2008 Decisions*. Paper 1149.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1149

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-3224

IN RE: JANET L. NATALE,
Debtor

FRENCH & PICKERING CREEKS CONSERVATION
TRUST, INC.,
Appellant

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civil No. 04-cv-02839)
District Judge:  The Honorable Mary A. McLaughlin

Submitted Under Third Circuit LAR 34.1(a)
May 6, 2008

Before: SCIRICA, Chief Judge, BARRY and HARDIMAN, Circuit Judges

(Opinion Filed: May 23, 2008)

OPINION

BARRY, Circuit Judge

French and Pickering Creeks Conservation Trust, Inc. (the "Trust") appeals the

decision of the District Court affirming the decision of the Bankruptcy Court discharging

Janet Natale under 11 U.S.C. § 727. We will affirm.

## I.

Because we write only for the parties, familiarity with the facts is presumed, and we set forth only those facts that are relevant to our analysis.

In 1989, Janet Natale and her husband Ronald, together with Ronald's parents, purchased a tract of land in rural Pennsylvania. The property was encumbered by a covenant in favor of the Trust prohibiting the construction of a residential building. Notwithstanding the covenant, the Natales announced their intention to build a house on the property. The Trust brought suit in the Chester County Court of Common Pleas ("CCP") to enjoin the Natales from building the house, but the CCP held that the covenant was invalid. The Trust appealed. While the appeal was pending, the Natales began construction and received financing from two banks, each of which took a mortgage on the property. The Pennsylvania Superior Court later reversed, holding that the covenant was valid, and remanded to the CCP for further proceedings.

On remand, the CCP ordered the Natales to remove the house. The Natales failed to comply, and the CCP awarded the Trust $100,000 in damages to fund the removal of the house. The CCP then authorized the Trust to remove the house, which it did, incurring an expense of $30,000. Before the Trust could be reimbursed, however, the Natales filed for Chapter 13 bankruptcy protection.

The Bankruptcy Court found that the banks' mortgages had priority over the

Trust's judgment lien. This finding was of little consequence, however, because the Court further found that the Natales' $51,211 joint interest in the property was subject to a tax lien in the amount of $56,772. The tax lien had priority over the mortgages and the judgment lien, and because it exceeded the Natales' interest in the property, the mortgages were void under 11 U.S.C. § 506(d), and the judgment lien was void under 11 U.S.C. § 522(f). Subsequently, while the bankruptcy proceedings were still pending, the Natales divorced and Janet Natale converted her Chapter 13 case to Chapter 7. Over the objections of the Trust, the Bankruptcy Court discharged Janet Natale. The Trust appealed to the District Court, which affirmed. This appeal followed.[1]

## II.

In reviewing the Bankruptcy Court's determinations, "we stand in the shoes of the district court, applying a clearly erroneous standard to the bankruptcy court's findings of fact and a plenary standard to that court's legal conclusions." *In re IT Group, Inc.*, 448 F.3d 661, 667 (3d Cir. 2006) (citation omitted). A factual finding "is clearly erroneous if we are left with a definite and firm conviction that a mistake has been committed." *Gordon v. Lewistown Hosp.*, 423 F.3d 184, 201 (3d Cir. 2005).

## III.

The Trust raises four issues on appeal: (1) whether, under 11 U.S.C. § 523(a)(6),

---

[1] Appellee Janet Natale failed to make an appearance or file a brief in this appeal. Under these circumstances, "we are required to proceed without the benefit of [the] appellee's brief." *Torisky v. Schweiker*, 446 F.3d 438, 442 (3d Cir. 2006).

the judgment lien was nondischargeable because it resulted from Janet Natale's malicious and willful conduct; (2) whether the judgment lien should have been given priority over the mortgages under the doctrine of equitable subordination; (3) whether Janet Natale should have been denied discharge because she "may have" transferred her interest in the property to Ronald; and (4) whether the Bankruptcy Court failed to properly account for Janet Natale's interest in the property and liquidate the property.

A.  Malicious And Intentional Injury.

Under 11 U.S.C. § 523(a)(6), a debtor cannot be discharged from any debt resulting from "willful and malicious injury by the debtor to another entity or to the property of another entity."  The Trust claims that the Bankruptcy Court erred in discharging Janet Natale's obligation to pay the $30,000 debt owed to the Trust for the removal of the house, because she willfully and maliciously injured the Trust by building the house in the first place.  Based on our review of the record, it does not appear that this issue was raised in the Bankruptcy Court.  Generally, "when a party fails to raise an issue in the bankruptcy court, the issue is waived and may not be considered by the district court on appeal."  *In re Kaiser Group Int'l Inc.*, 399 F.3d 558, 565 (3d Cir. 2005).  A finding of waiver is appropriate particularly where "the evidence in the record is insufficient to permit a court to realistically" decide the issue.  *Buncher Co. v. Official Comm. of Unsecured Creditors of GenFarm Ltd. P'ship IV*, 229 F.3d 245, 253 (3d Cir. 2000).  Because the Trust failed to allege a § 523(a)(6) violation in the Bankruptcy Court,

4

that issue is waived.

Notwithstanding the obvious problem of waiver, the Trust asks us to review the record and find that Janet Natale acted willfully and maliciously. We are not factfinders, and we are reluctant to make factual findings on a record as woefully incomplete as that presented here. *See Buncher*, 229 F.3d at 253. That said, even if we were inclined to reach the merits of the Trust's § 523(a)(6) claim on the scant existing record, the Trust has not shown that it is entitled to relief. In the different (albeit related) context of determining the priority of the judgment lien vis-a-vis the mortgages, the Trust argued that the banks had obtained the mortgages in bad faith. The Bankruptcy Court disagreed:

> It was in no way preordained that the mere existence of the covenant would inexorably lead to entry of a money judgment to compensate the beneficiary of the covenant for its enforcement. *Indeed, when the mortgages were created the CCP had just issued an order denying enforcement of the covenant. From the perspective of the parties at the time, a reversal of that order on appeal may likely have seemed remote.* ...The mortgagees could arguably be charged with knowledge of a heightened potential for further legal action, but not necessarily more. Certainly, the mortgagees are not automatically charged with knowledge of a specific money judgment that had not yet come into existence.

(App. 80-81 (emphasis added).) The same could be said for Janet Natale, who reasonably may have believed that the CCP's initial judgment invalidating the covenant would be affirmed on appeal. On this record, there is insufficient evidence to find that she acted with the willfulness and maliciousness required to implicate § 523(a)(6).

B. Equitable Subordination.

The Trust argues that the Bankruptcy Court should have accorded its judgment lien

5

priority over the mortgages under the doctrine of equitable subordination. That doctrine "challenges granting [a] debt the priority to which it is entitled under applicable law because of the creditor's inequitable conduct." *In re Insilco Tech., Inc.*, 480 F.3d 212, 218 (3d Cir. 2007); *see also Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holding Unsecured Claims*, 323 F.3d 228, 233 (3d Cir. 2003) (the purpose of equitable subordination is "to undo or to offset any inequality in the claim position of a creditor that will produce injustice or unfairness to other creditors in terms of the bankruptcy results") (citation omitted). According to the Trust, because the extension of credit by the banks aided the Natales in breaching the covenant, it would be inequitable for the mortgages to be accorded priority over the judgment lien.

In determining the relative priority of the mortgages vis-a-vis the judgment lien, the Bankruptcy Court explicitly found that "equitable subordination has been neither raised in the pleadings nor argued." (App. 82.) Accordingly, that argument is waived. *See In re Kaiser*, 399 F.3d at 565; *Buncher*, 229 F.3d at 253.

Nevertheless, as with the § 523(a)(6) issue, the Trust asks us to review the existing record and make factual findings with respect to the banks' alleged inequitable conduct. Again, and for the same reasons, we are reluctant to do so. Even if we were inclined to reach the merits, however, the record simply does not support the Trust's position. As discussed above, the Bankruptcy Court found that the banks reasonably could have taken the mortgages in good faith, relying upon the CCP's initial decision invalidating the

6

covenant. That finding is not clearly erroneous. While the banks' conduct may have been imprudent in light of a possible reversal on appeal, the record does not support the Trust's claim that the banks acted inequitably in taking the mortgages.

C. The Possible Transfer Of Janet Natale's Interest In The Property.

The Trust claims that the Bankruptcy Court erred by discharging Janet Natale when she "may have" transferred her interest in the property to Ronald. Unlike the other issues raised by the Trust, this issue was raised in the Bankruptcy Court. The Court rejected it, however, on the ground that no such transfer took place. That finding is not clearly erroneous. Janet Natale was prepared to testify at the February 19, 2003 hearing that no such transfer took place (the Trust chose not to question her), and her counsel made a proffer to that effect. The only basis for the Trust's claim that she transferred her interest in the property was her apparent outburst at a creditors' meeting, described by the Trust's counsel as: "she just threw up her hands and said you can have it all." (App. 125.) We agree with the Bankruptcy Court that that statement had no "legally cognizable [e]ffect," and that it "was, most likely, simply an expression of frustration by Mrs. Natale, at her husband, her circumstances, or both." (App. 113.)

D. The Disposition of Janet Natale's Interest In The Property.

Finally, the Trust claims that the Bankruptcy Court failed to properly dispose of the property. In so doing, it raises two separate arguments. First, it claims that the Court erroneously discharged Janet Natale without deciding what interest, if any, she retained in

7

the property. Second, it claims that the Court failed to properly liquidate the property. Those arguments were never raised in the Bankruptcy Court, and therefore they are waived. *See In re Kaiser*, 399 F.3d at 565; *Buncher*, 229 F.3d at 253.

Even if they were not waived, we simply cannot decide these issues on the basis of the existing record. *See Buncher*, 229 F.3d at 253. The Trust suggests that Janet Natale continues to own an interest in the property "apparently free of claims of the creditors." (Trust's Br. 20.) The record does not support that allegation, and it overlooks the Bankruptcy Court's finding that her interest in the property was wholly impaired by a tax lien. It also overlooks the Court's statement that "when Mrs. Natale converted her case from Chapter 13 to Chapter 7, she ceased for all practical purposes to have any interest in the realty" because her interest "came under the control of the Chapter 7 Trustee." (App. 112.) The Trust also claims that the property should have been liquidated, but it was not. Again, there is no record from which we can determine whether the property was liquidated, and if so, whether the liquidation was proper. We repeat our earlier admonition that we are not factfinders, and given the insufficiency of the record, we simply cannot decide these issues in the first instance.

**IV.**

For the foregoing reasons, we will affirm the decision of the District Court affirming the decision of the Bankruptcy Court.